**BLACKROCK ALLOCATION TARGET SHARES: SERIES S PORTFOLIO, et al., Plaintiffs,**

**v.**

**The BANK OF NEW YORK MELLON, et al., Defendants.**

14 Civ. 09372(GBD)

United States District Court, S.D. New York.

Signed March 25, 2016

Benjamin Galdston, Blair Allen Nicholas, Brett M. Middleton, David R. Kaplan, Lucas E. Gilmore, Timothy Alan Delange, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA, Jai Kamal Chandrasekhar, Jeroen Van Kwawegen, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, for Plaintiffs.

Blackrock Core Active Libor Fund B. pro se.

AST PIMCO Total Return Bond Portfolio, pro se.

Fixed Income Shares: Series M, Pacific Bay CDO, LTD., pro se.

PCM Fund, Inc., pro se.

PIMCO Absolute Return Strategy 3D Offshore Fund Ltd., pro se.

PIMCO Absolute Return Strategy II Master Fund LDC, pro se.

PIMCO Bermuda Trust II: PIMCO Bermuda Income Fund (M), pro se.

PIMCO Bermuda Trust: PIMCO Bermuda U.S. Low Duration Fund, pro se.

PIMCO Cayman SPC Limited: PIMCO Cayman Global Aggregate Bond Segregated Portfolio, pro se.

PIMCO Cayman SPC Limited: PIMCO Cayman Japan Coreplus Segregated Portfolio, pro se.

PIMCO Cayman SPC Limited: PIMCO Cayman Japan Coreplus Strategy Segregated Portfolio, pro se.

PIMCO Cayman SPC Limited: PIMCO Cayman Japan Low Duration Segregated Portfolio, pro se.

PIMCO Cayman SPC Limited: PIMCO Cayman Unconstrained Bond Segregated Portfolio, pro se.

PIMCO Cayman Trust: PIMCO Cayman Foreign Bond Fund, pro se.

PIMCO Cayman Trust: PIMCO Cayman Global Aggregate Ex-Japan (Yen-Hedged) Bond Fund II, pro se.

PIMCO Cayman Trust: PIMCO Cayman Global Bond (NZD-Hedged) Fund, pro se.

PIMCO Cayman Trust: PIMCO Cayman Global Ex-Japan (Yen-Hedged) Bond Fund, pro se.

PIMCO Cayman Trust: PIMCO Cayman Total Return Strategy Fund, pro se.

PIMCO Corporate & Income Opportunity Fund, pro se.

PIMCO Corporate & Income Strategy Fund, pro se.

PIMCO Distressed Senior Credit Opportunities Fund II, L.P., pro se.

PIMCO Dynamic Credit Income Fund, pro se.

PIMCO Dynamic Income Fund, pro se.

PIMCO ETF Trust: PIMCO Low Duration Active Exchange-Traded Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Diversified Income Duration Hedged Fund, pro se.

PIMCO ETF Trust: PIMCO Low Duration Active Exchange-Traded Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Diversified Income Duration Hedged Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Diversified Income Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Euro Bond Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Euro Income Bond Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Global Bond Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Global Investment Grade Credit Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Income Fund, pro se.

PIMCO Funds: Global Investors Series PLC, PIMCO Credit Absolute Return Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Stocksplus Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Total Return Bond Fund, pro se.

PIMCO Funds: Global Investors Series PLC, Unconstrained Bond Fund, pro se.

PIMCO Funds: Global Investors Series PLC, US Short-Term Fund; PIMCO Funds, pro se.

PIMCO Funds: PIMCO Commoditiesplus Strategy Fund, pro se.

PIMCO Funds: PIMCO Commodity Real Return Strategy Fund, pro se.

PIMCO Funds: PIMCO Diversified Income Fund, pro se.

PIMCO Funds: PIMCO Em Fundamental Indexplus Ar Strategy Fund, pro se.

PIMCO Funds: PIMCO Emerging Local Bond Fund, pro se.

PIMCO Funds: PIMCO Emerging Markets Bond Fund, pro se.

PIMCO Funds: PIMCO Emerging Markets Currency Fund, pro se.

PIMCO Funds: PIMCO Floating Income Fund, pro se.

PIMCO Funds: PIMCO Foreign Bond Fund (U.S. Dollar-Hedged), pro se.

PIMCO Funds: PIMCO Foreign Bond Fund (Unhedged), pro se.

PIMCO Funds: PIMCO Fundamental Advantage Absolute Return Strategy Fund, pro se.

PIMCO Funds: PIMCO Global Advantage Strategy Bond Fund, pro se.

PIMCO Funds: PIMCO Global Bond Fund (U.S. Dollar-Hedged), pro se.

PIMCO Funds: PIMCO Global Bond Fund (Unhedged), pro se.

PIMCO Funds: PIMCO High Yield Fund, pro se.

PIMCO Funds: PIMCO Income Fund, pro se.

PIMCO Funds: PIMCO Inflation Response Multi-Asset Fund, pro se.

PIMCO Funds: PIMCO International Fundamental Indexplus Ar Strategy Fund, pro se.

PIMCO Funds: PIMCO International Stocksplus Ar Strategy Fund (U.S. Dollar-Hedged), pro se.

PIMCO Funds: PIMCO Investment Grade Corporate Bond Fund, pro se.

PIMCO Funds: PIMCO Long Duration Total Return Fund, pro se.

PIMCO Funds: PIMCO Long-Term Credit Fund, pro se.

PIMCO Funds: PIMCO Low Duration Fund, pro se.

PIMCO Funds: PIMCO Low Duration Fund II, pro se.

PIMCO Funds: PIMCO Low Duration Fund III, pro se.

PIMCO Funds: PIMCO Moderate Duration Fund, pro se.

PIMCO Funds: PIMCO Mortgage Opportunities Fund, pro se.

PIMCO Funds: PIMCO Mortgage-Backed Securities Fund, pro se.

PIMCO Funds: PIMCO Real Estate Real Return Strategy Fund, pro se.

PIMCO Funds: PIMCO Real Return Fund, pro se.

PIMCO Funds: PIMCO Short-Term Fund, pro se.

PIMCO Funds: PIMCO Small Company Fundamental Indexplus Ar Strategy Fund, pro se.

PIMCO Funds: PIMCO Stocksplus Absolute Return Fund, pro se.

PIMCO Funds: PIMCO Stocksplus Ar Short Strategy Fund, pro se.

PIMCO Funds: PIMCO Stocksplus Fund, pro se.

PIMCO Funds: PIMCO Total Return Fund, pro se.

PIMCO Funds: PIMCO Total Return Fund II, pro se.

PIMCO Funds: PIMCO Total Return Fund III, pro se.

PIMCO Funds: PIMCO Total Return Fund IV, pro se.

PIMCO Funds: PIMCO Unconstrained Bond Fund, pro se.

PIMCO Funds: PIMCO Unconstrained Tax Managed Bond Fund, pro se.

PIMCO Funds: PIMCO Worldwide Fundamental Advantage Ar Strategy Fund, pro se.

PIMCO Funds: Private Account Portfolio Series Asset-Backed Securities Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series Developing Local Markets Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series High Yield Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series International Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series Investment Grade Corporate Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series Mortgage Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series Short-Term Portfolio, pro se.

PIMCO Funds: Private Account Portfolio Series U.S. Government Sector Portfolio, pro se.

PIMCO Global Credit Opportunity Master Fund LDC, pro se.

PIMCO Global Income Opportunities Fund, pro se.

PIMCO Global Stocksplus & Income Fund, pro se.

PIMCO High Income Fund, pro se.

PIMCO Income Opportunity Fund, pro se.

PIMCO Income Strategy Fund II, pro se.

PIMCO Large Cap Stocksplus Absolute Return Fund, pro se.

PIMCO Multi-Sector Strategy Fund Ltd., pro se.

PIMCO Offshore Funds—PIMCO Absolute Return Strategy IV Efund, pro se.

PIMCO Offshore Funds: PIMCO Offshore Funds--PIMCO Absolute Return Strategy V Alpha Fund, pro se.

PIMCO Strategic Income Fund, Inc., pro se.

PIMCO Tactical Opportunities Master Fund Ltd., pro se.

PIMCO Variable Insurance Trust: PIMCO Commodity Real Return Strategy Portfolio, pro se.

PIMCO Variable Insurance Trust: PIMCO Foreign Bond Portfolio (U.S. Dollar Hedged), pro se.

PIMCO Variable Insurance Trust: PIMCO Foreign Bond Portfolio (Unhedged), pro se.

PIMCO Variable Insurance Trust: PIMCO Global Advantage Strategy Bond Portfolio, pro se.

PIMCO Variable Insurance Trust: PIMCO Global Bond Portfolio (Unhedged), pro se.

PIMCO Variable Insurance Trust: PIMCO Low Duration Portfolio, pro se.

PIMCO Variable Insurance Trust: PIMCO Real Return Portfolio, pro se.

PIMCO Variable Insurance Trust: PIMCO Total Return Portfolio, pro se.

PIMCO Variable Insurance Trust: PIMCO Unconstrained Bond Portfolio, pro se.

Terlingua Fund 2, LP, pro se.

Michael Martinez, Kramer Levin Naftalis & Frankel LLP, Christopher James Houpt, Matthew D. Ingber, Allison Joan Zolot, Jarman Douglas Russell, Lisa Robyn Blank, Silvia Araxie Babikian, Mayer Brown LLP, New York, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

This action is one of many derivative actions brought in New York state court and the Southern District of New York against trustees of trusts containing residential mortgage-backed securities ("RMBS"). *See, e.g., Fixed Income Shares: Series M v. Citibank N.A.*, 130 F.Supp.3d 842, 845–46 (S.D.N.Y.2015). Plaintiffs are holders in trusts for which Defendant The Bank of New York Mellon ("BNYM") serves as a trustee. (Compl. ¶¶ 1, 18, ECF No. 1.) Plaintiffs have also named the trusts themselves as nominal defendants. (Compl. ¶ 175.) Plaintiffs assert six causes of action: (1) breach of contract (Compl. 501–513), (2) violation of the Trust Indenture Act of 1939 ("TIA")

(Compl.¶¶ 514–522), (3) negligent breach of the pre-default duty of independence (Compl.523–530), (4) breach of the fiduciary duty of care (Compl.¶¶ 531–537), (5) negligent breach of the duty of care (Compl.538–544), and (6) breach of the post-default fiduciary duty of independence (Compl.¶¶ 545–552). BNYM moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Complaint in its entirety.

## I. BACKGROUND

Plaintiffs are a group of investors in 260 RMBS trusts ("Trusts") created between 2004 and 2008 originally secured by loans valued at more than $177.6 billion at the time of securitization. (Compl.¶¶ 1, 16–19.) Plaintiffs' claims arise out of BNYM's role as the trustee of those trusts. (*See* Compl. ¶ 1.)

The Trusts' assets are residential mortgage loans. (*See* Compl. ¶ 2.) Investment banks acting as "Sponsors" and "Depositors" (collectively known as "Sellers") first acquired these loans generated by mortgage loan originators. (*See* Compl. ¶¶ 2, 197–99.) The Sellers then pooled the loans and conveyed them into the Trusts. (Compl.¶¶ 2, 197–99.) The Sponsors select "Servicers," who collect payments on the loans from the underlying borrowers and send the funds to the trustees. (Compl.2, 200.) The trustees make payment to the Trusts' Certificateholders. (Compl.¶ 200.) In this manner, the principal and interest payments on the underlying residential mortgage loans are "passed through" to the Trusts' Certificateholders. (Compl.¶ 2.)

The Sellers provide contractual representations and warranties to the Trusts attesting to the completeness of the mortgage loan files and credit quality of the underlying loans. (Compl.¶¶ 3, 205.) The Sellers contract to cure, substitute, or repurchase mortgages that materially breach these representations and warranties. (Compl.206–09.) The Servicers also covenant to service loans in accordance with customary and usual standards of practice of prudent institutional mortgage lenders servicing similar loans. (Compl.¶ 229.)

The Trusts in this action are of two types. Seventeen are Delaware statutory trusts ("Indenture trusts"). (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 4–5, 5 n.5, ECF No. 51; DeLange Decl., Ex. 1, Indenture Trusts at 1, ECF No. 52–1. )[1] The Indenture trusts issue notes and are governed by an indenture and related documents that the indenture incorporates and references, including the Sale and Servicing Agreement ("SSA"). (Compl.¶ 177.) The remaining 243 trusts are New York common law trusts ("PSA trusts"). (Opp'n at 5; *see* Compl. ¶ 177.) The PSA trusts issue certificates and are governed by Pooling and Servicing Agreements ("PSAs") and related agreements incorporated and referenced by the PSAs. (Compl.177.) The Complaint describes the trust indentures, the PSAs, and the other agreements entered into in connection with the creation of the trusts at issue in this action as "Governing Agreements." (*See, e.g.,* Compl. ¶ 177.) The Complaint alleges that the terms of the Governing Agreements that are relevant to this action are substantially similar and impose substantially the same duties and obligations on BNYM. (*See* Compl. 203.)

---

1. The Complaint alleged that twelve of the trusts are Delaware statutory trusts, (Compl.¶ 17); however, in their memorandum of law in opposition to BNYM's motion to dismiss and an exhibit attached to an appended declaration, Plaintiffs allege that seventeen of the trusts are Delaware statutory trusts.

The Governing Agreements describe the trustee's duties. Among the duties that the Governing Agreements impose is a duty to give notice to the Seller and other parties upon the discovery of the breach of any representations and warranties that materially and adversely affects the value and interests of the Trusts. (Compl.220.) The trustee must also enforce the Seller's duty to repurchase the breaching loan if the Seller refuses or fails to cure the breach. (Compl.¶ 218.) The Governing Agreements also require the trustee to notify a responsible Servicer upon discovery of the Servicer's failure to observe or perform in any material respect any covenant or agreement and demand the timely remedy of any servicing failure. (Compl.¶ 221.) In the event of a default, the Governing Agreements impose heightened duties on the trustee. (*See* Compl. ¶¶ 223–247.) Once an event of breach has occurred, the Governing Agreements require that the trustee must exercise the same degree of care and skill as a prudent person would in the conduct of his or her own affairs. (*See* Compl. ¶¶ 223, 244.)

## II. LEGAL STANDARDS

BNYM moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1); *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir.2005). In reviewing a

motion to dismiss under Rule 12(b)(1), a "court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir.2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.* (citing *Makarova*, 201 F.3d at 113.) A court deciding a 12(b)(1) motion "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but ... may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir.2004).

"A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F.Supp.3d 103, 119–20 (S.D.N.Y.2015). In deciding a Rule 12(b)(6) motion, a court "accept[s] all factual allegations in the complaint as true ... and draw[s] all reasonable inferences" in favor of the plaintiffs. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir.2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir.2008)). A court is "not, however, bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir.2008)). In order to survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A court deciding a Rule 12(b)(6) motion is not limited to the face of the complaint. A court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund. Ltd.,* 493 F.3d 87, 98 (2d Cir.2007).

## III. FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint asserts that this Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the TIA and supplemental jurisdiction over the remaining claims.[2] (Compl.¶ 181.) BNYM argues that this Court must dismiss this action in its entirety because the TIA does not create a private cause of action, meaning that there is no federal question jurisdiction at all and this Court lacks subject-matter jurisdiction over the action. (July 8, 2015 Oral Arg. Tr. ("Tr.") at 4:12–1:17.) As BNYM acknowledges, however, no court has held that the TIA does not create a private cause of action. ("Tr." at 32:09–32:10.)

### A. Implied Right of Action Under TIA

Section 315 of the TIA does not expressly create a federal private cause of action. A series of recent decisions in this District have recognized, however, that sections 315(b) and (c) establish an implied right of action although section 315(a) does not. *See, e.g., Royal Park Invs. SA/NV v. Bank of New York Mellon,* No. 14 Civ. 06502, 2016 WL 899320, at *8 (S.D.N.Y. Mar. 2, 2016) (holding that sections 315(b) and (c) create a private cause of action but section 315(a) does not); *Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n,* 109 F.Supp.3d 587, 612 (S.D.N.Y.2015) (same). Section 315(a) does not create a private cause of action because it imposes no additional duties upon the trustee; instead, section 315(a) only requires that the indenture contain language limiting the trustee's duties to those in the indenture. *Royal Park Invs. SA/NV,* 109 F.Supp.3d at 611; *see* 15 U.S.C. § 77ooo(a)(1). Plaintiffs have no right of action under section 315(a).

Sections 315(b) and (c), by contrast, impose affirmative obligations on the trustee.

---

**2.** The Complaint also alleges that this Court has jurisdiction pursuant to the 28 U.S.C. § 1332(d) (Class Action Fairness Act). (Compl.¶ 181.) BNYM asserts in its memorandum of law in support of its motion to dismiss that Plaintiffs have since abandoned that jurisdictional allegation. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 11 n.4, Mar. 16, 2015, ECF No. 50.) Plaintiffs did not dispute BNYM's assertion in their memorandum of law in opposition to BNYM's motion or at oral argument. Accordingly, Plaintiffs have abandoned the argument that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). *See Jackson v. Fed. Exp.,* 766 F.3d 189, 196 (2d Cir.2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

Section 315(b) requires indenture trustees to "give to the indenture security holders ... notice of all defaults known to the trustee...." 15 U.S.C. § 77ooo(b). Section 315(c) requires the trustee to "exercise in case of default ... such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c). "[C]ourts—including those in this Circuit—have consistently recognized an implied private right of action under both [sections 315(b) and (c) ]." *Fixed Income Shares: Series M,* 130 F.Supp.3d at 848; *see also, e.g., Ret. Bd. of the Policemen's Annuity v. The Bank of New York Mellon,* No. 11 Civ. 05459, 2015 WL 9275680, at *2 (S.D.N.Y. Dec. 18, 2015) ( ["C]ourts have uniformly held that Section 315 gives rise to a private right of action"); *Zeffiro v. First Pa. Banking & Tr. Co.,* 623 F.2d 290, 292 n. 1, 301 (3d Cir.1980) (holding that, *inter alia,* sections 315(b) and (c) of the TIA create a private cause of action); *LNC Inv., Inc. v. First Fid. Bank,* 935 F.Supp. 1333, 1338–39 (S.D.N.Y.1996) (holding that section 315(c) creates a private cause of action); *Bluebird Partners, L.P. v. First Fid. Bank, N.A.,* 85 F.3d 970, 974 (2d Cir.1996) (citing *Zeffiro* favorably and describing it as "establish[ing] a private cause of action under the [TIA]").

Furthermore, courts in this District have expressly rejected BNYM's argument that the Supreme Court's decisions in *Stoneridge Inv. Partners, LLC v. Sci.– Atlanta,* 552 U.S. 148, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008), and *Alexander v. Sandoval,* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), abrogated prior case law holding that the TIA establishes a private cause of action. *See Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n,* No. 14 Civ. 09401, 165 F.Supp.3d 80,

103–04, 2016 WL 796848, at *19 (S.D.N.Y. Feb. 26, 2016); *Ret. Bd. of the Policemen's Annuity,* 2015 WL 9275680, at *2–3. BNYM argues that, under the Supreme Court's *Stoneridge* decision, "there is an implied cause of action only if the underlying statute can be interpreted to disclose the intent to create one." (Defs.' Mem. at 34 (quoting *Stoneridge Inv. Partners, LLC,* 552 U.S. at 164, 128 S.Ct. 761).) But the Supreme Court distinguished its holding in *Stoneridge* from "case[s] in which Congress has enacted a regulatory statute and then has accepted, over a long period of time, broad judicial authority to define substantive standards of conduct and liability." *Stoneridge Inv. Partners, LLC,* 552 U.S. at 163, 128 S.Ct. 761. Courts have unanimously recognized a private cause of action under the TIA for at least thirty-five years. *See Ret. Bd. of the Policemen's Annuity,* 2015 WL 9275680, at *2. In *Sandoval,* the Supreme Court held that there was no implied right of action to enforce disparate impact regulations under Title VI of the Civil Rights Act of 1964, explaining that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" 532 U.S. at 289, 121 S.Ct. 1511 (quoting *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981)). But "Section 315 does not fall into the category of statutes that 'focus on the person regulated rather than the individuals protected,' which would not confer a private right of action." *Blackrock Core Bond Portfolio,* 165 F.Supp.3d at 104, 2016 WL 796848, at *19 (quoting *Sandoval,* 532 U.S. at 289, 121 S.Ct. 1511). "Instead, Section 315 imposes 'specific fiduciary duties, which necessarily implies corresponding rights in the beneficiaries.'" *Id.* (quoting *Ret. Bd. of the Po-*

*licemen's Annuity,* 2015 WL 9275680, at *3).

As sections 315(b) and (c) establish an implied private right of action, this Court has original jurisdiction over Plaintiffs' claims under those sections.

## B. Supplemental Jurisdiction Over State Law Claims

▮▮▮ Federal district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction "is a favored and normal course of action." *Promisel v. First Am. Artificial Flowers, Inc.,* 943 F.2d 251, 254 (2d Cir.1991). Claims form part of the same case or controversy when they " 'derive from a common nucleus of operative fact' and are such that one would ordinarily expect them to be tried in one judicial proceeding." *People ex rel. Abrams v. Terry,* 45 F.3d 17, 23 n. 7 (2d Cir.1995) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). The exercise of supplemental jurisdiction is appropriate when "the facts underlying the federal and state claims substantially overlap ... or where the presentation of [the] federal claim necessarily [brings] the facts underlying the state claim before the court." *Blackrock Balanced Capital Portfolio v. HSBC Bank USA, Nat. Ass'n,* 95 F.Supp.3d 703, 708 (S.D.N.Y.2015) (alterations in original) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 704 (2d Cir.2000)). In determining whether a district court may exercise supplemental jurisdiction, "the key question is whether the parties would ordinarily be expected to try all of those claims in one judicial proceeding given the common

threads running through those claims." *Id.*

After determining that the exercise of supplemental jurisdiction is appropriate under section 1367(a), a district court must determine whether it should decline to exercise that jurisdiction for one of the reasons enumerated in section 1367(c). *See* 28 U.S.C. § 1367(c). "Where section 1367(a) is satisfied, 'the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).' " *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 245 (2d Cir.2011) (quoting *Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 448 (2d Cir. 1998)). Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction over related state law claims in four circumstances: "(1) the claim raises a novel or complex issue of State law," "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "(3) the district court has dismissed all claims over which it has original jurisdiction," or "(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C § 1367(c). "Courts in this circuit have found that state claims predominate over federal claims where the federal claims involve a technical or other issue that is peripheral to the state claims and where the factual or legal analyses governing the federal and state claims are unrelated." *SST Glob. Tech., LLC v. Chapman,* 270 F.Supp.2d 444, 456–57 (S.D.N.Y.2003) (internal citations omitted).

▮▮▮ Relying principally on the Second Circuit's statements that Plaintiffs' claims must be "proved loan-by-loan and trust-by-trust," BNYM argues that this Court cannot exercise supplemental jurisdiction over Plaintiffs' state law claims relating to the PSA trusts because they lack a common

nucleus of operative fact with Plaintiffs' TIA claims.[3] (*See* Defs.' Mem. at 10–15 (quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 162 (2d Cir.2014), *cert. denied*, — U.S. —, 136 S.Ct. 796, 193 L.Ed.2d 711 (2016)).) But as other courts in this District have recognized, "the fact that Plaintiffs will have to present loan-specific evidence to prevail at trial or on summary judgment does not mean that there is no common nucleus of operative fact between the PSA Trust claims and the Indenture Trust claims." *Fixed Income Shares: Series M*, 130 F.Supp.3d 842, 851–52; *see also Ret. Bd. of the Policemen's Annuity*, 2015 WL 9275680, at *3–4 (S.D.N.Y. Dec. 18, 2015); *Blackrock Balanced Capital Portfolio*, 95 F.Supp.3d at 709–10.

The Indenture and PSA trusts contain substantially similar contract provisions and impose substantially the same duties on BNYM as trustee. (Compl.¶ 177.) Many of the entities involved with the Indenture trusts were also involved with the PSA trusts. (*See* DeLange Decl., Ex. 2, Charts 2–3, Originators, Sponsors, and Master Servicers Common to Indenture Trusts and PSA Trusts, ECF No. 52–2.) Plaintiffs' "allegations arise from the common conduct of [BNYM] in systematically failing to perform its duties as a trustee. This common thread supports the exercise of supplemental jurisdiction." *Blackrock Balanced Capital Portfolio*, 95 F.Supp.3d 703 at 709–10; *see also Fixed Income Shares: Series M*, 130 F.Supp.3d at 851–52. Plaintiffs' claims therefore share a common nucleus of operative fact, and this Court has supplemental jurisdiction over Plaintiffs' state law claims relating to the PSA trusts.

There is no reason for the Court to decline to exercise its supplemental jurisdiction. First, Plaintiffs' contract, negligence, and breach of fiduciary duty claims do not raise novel or complex issues of state law. This Court would have to consider those claims with regard to the Indenture trusts whether or not it exercised supplemental jurisdiction over the PSA trusts. Additionally, although there are more state than federal claims, the claims are of the same type and therefore the state claims do not substantially predominate. *See Shahriar*, 659 F.3d at 246 ("[T]he fact that there are more class members in the state law class action than those in the FLSA collective action should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase.") (internal quotation marks and citation omitted)). As another Court in this District explained recently in a similar case, "[i]n adjudicating the TIA claim for the Indenture Trusts, this Court must determine issues relating to (1) [defendant]'s duties to enforce Seller and servicing violations; (2) whether plaintiffs can prove that [defendant] discovered Seller breaches of representations and warranties and servicing violations, the occurrence of an Event of Default, and [defendant]'s knowledge of an Event of Default; and (3) whether [defendant] provided notice to holders and acted prudently subsequent to an Event of Default. Adjudicating the PSA Trust claims will involve the interpretation of substantially similar contract provisions, arising from the same set of operative facts." *Blackrock Balanced Capital Portfolio*, 95 F.Supp.3d at 710.

There are also no exceptional circumstances here that would give this Court

---

**3.** BNYM does not challenge this Court's supplemental jurisdiction over the state law claims relating to the Indenture trusts.

(Defs.' Reply Mem. of Law in Supp. of BNYM's Mot. to Dismiss at 4 n.5, ECF No. 53.)

reason to decline jurisdiction. "Declining to exercise supplemental jurisdiction would actually increase the complexity of the action by creating parallel proceedings regarding one subject matter." *Id.* at 711. Accordingly, this Court does not decline to exercise jurisdiction over Plaintiffs' state law claims relating to the PSA trusts.

## IV. FAILURE TO STATE A CLAIM

BNYM argues that Plaintiffs fail to state any plausible claim. In particular, BNYM argues that Plaintiffs' breach of contract claim fails because Plaintiffs do not allege that BNYM actually knew of the breach of any parties' representations and warranties or events of default, (Defs.' Mem. at 21–33); that their TIA claims fail for similar reasons, (Defs.' Mem. at 37–38); and that their negligence and fiduciary duty claims fail because they are duplicative of Plaintiffs' contract claim and because Plaintiffs have failed to adequately plead a conflict of interest, (Defs.' Mem. at 38–10).

### A. Breach of Contract

■ Under New York law, "[t]o make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages,"' *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N. Y.,* 375 F.3d 168, 177 (2d Cir.2004) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996)). The only disputed element is whether BNYM breached the contracts. (*See* Defs.' Mem. at 21.)

### 1. Discovery and Actual Knowledge of Breaches of Representations and Warranties

■ Plaintiffs allege that BNYM failed to performs its obligations under the Governing Agreements by failing to provide written notice of breaches of the sellers' mortgage representations and warranties upon BNYM's discovery of those breaches, and by failing to enforce the seller's obligation to repurchase, substitute, or cure the defective mortgage loans. (*See, e.g.,* Compl. ¶ 505.) Relying again on the Second Circuit's statements that Plaintiffs' claims must be "proved loan-by-loan and trust-by-trust," BNYM argues that Plaintiffs have not plausibly alleged that BNYM had actual knowledge of breaches of representations and warranties because Plaintiffs have not alleged discovery of specific breaches of representations and warranties or knowledge of breaches regarding specific mortgage loans. (*See* Defs.' Mem. at 21–30 (quoting *Ret. Bd. of the Policemen's Annuity & Ben. Fund,* 775 F.3d at 162).) The language on which BNYM relies, however, "looks way down the road from where we are to the proof that Plaintiffs would need to proffer to prevail on the merits—not the level of proof necessary to raise a reasonable inference that Defendant is liable." *Phoenix Light SF Ltd. v. Bank of New York Mellon,* No. 14 Civ. 10104, 2015 WL 5710645, at *6 (S.D.N.Y. Sept. 29, 2015).

■ Courts in this District have roundly rejected BNYM's argument, recognizing that Plaintiffs do not need to refer to breaches of particular representations and warranties at the pleadings stage. *See, e.g., Royal Park Invs. SA/NV v. Bank of New York Mellon,* 2016 WL 899320, at *4 ("[T]his argument is not valid in the procedural posture of a motion to dismiss, where the Court is evaluating the sufficiency of the pleadings, not the ultimate proof to be presented to a finder of fact."); *Blackrock Core Bond Portfolio,* 165 F.Supp.3d at 99, 2016 WL 796848, at *15 ("[T]he non-loan-specific pleading passes muster at this stage."); *Phoenix Light SF Ltd.,* 2015 WL 5710645, at *6 ("[T]he

Court rejects Defendant's attempt to import the Second Circuit's discussion into the pleadings context.")

The Complaint alleges that BNYM discovered and knew of Sellers' breaches of representations and warranties through, among other warning signs, high default rates, (e.g., Compl. 391–94), credit ratings declines (e.g., Compl. ¶¶ 251, 396–97), losses (e.g., Compl. ¶ 176), and government and newspapers reports about the abandonment of underwriting standards (Compl.¶¶ 254–56). Courts in this District have held that substantially similar allegations raise a plausible inference of a trustee's actual knowledge of breaches of representations and warranties. *See, e.g, Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2016 WL 899320, at \*4–6; *Royal Park Invs. SA/NV v. Deutsche BankNat'l Trust Co.*, No. 14 Civ. 04394, 2016 WL 439020, at \*6 (S.D.N.Y. Feb. 3, 2016) ("Plaintiff's detailed allegations of high default rates, staggering economic losses, and widespread investigation into RMBS securitization are sufficient to 'allow[ ] the court to draw the reasonable inference' that R & Ws were breached on a loan-by-loan basis." (alteration in original) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937)); *Phoenix Light SF Ltd.*, 2015 WL 5710645, at \*4. "Accordingly, this Court joins the chorus of judges in this district evaluating similar pleadings and concludes that [Plaintiffs] ha[ve] met, if not exceeded [their] Rule 8 burden...." *Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2016 WL 899320, at \*5. The allegations in the Complaint raise a plausible inference of BNYM's actual knowledge of breaches of representations and warranties.

### 2. Knowledge of Servicer Events of Default

Plaintiffs also allege that BNYM breached its obligations under the Governing Agreements by failing to provide Certificateholders with notice of Events of Default and to act as a prudent person once it had actual knowledge of servicer Events of Default. (Compl. ¶¶ 510–11.) BNYM argues that Plaintiffs have failed to allege both that any Events of Default occurred and that BNYM had knowledge that any Events of Default occurred. (Defs.' Mem. at 30–33.) BNYM argues that "[j]ust as 'actual knowledge' of a seller's breach of representations and warranties must be *loan*-specific, the Trustee's knowledge of a servicer's breach of its obligations under the contracts giving rise to an Event of Default must be *trust*-specific." (Defs.' Mem. at 32.) But Courts in this District have decisively rejected that argument as well. *See Fixed Income Shares: Series M*, 2015 WL 5244707, at \*12 (rejecting precisely that argument); *see also Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2016 WL 899320, at \*6 ("BNYM's attempt to apply a heightened pleading standard to allegations concerning actual knowledge is inappropriate at this stage. On a motion to dismiss, [Plaintiffs] need only plead facts sufficient to show that it is plausible that BNYM knew of servicer events of default."); *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2016 WL 439020, at \*8. Plaintiffs' allege that BNYM had actual knowledge based on BNYM's involvement in enforcement actions and other litigation related to servicers' improper servicing practices. (*See, e.g.*, Compl. 405–12.) Further, the Complaint alleges that BNYM had written notice from investors in other trusts for which BNYM also served as a trustee of systemic servicing violations committed by the same entities that service the trusts at issue in this action. (Compl.¶¶ 469–73.) Courts in this District have held that allegations such as these raise a plausible inference that Events of Default occurred and that a trustee had actual knowledge of

their occurrence. *See, e.g., Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2016 WL 899320. at *5–6; *Fixed Income Shares: Series M*, 2015 WL 5244707, at *12.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' first cause of action for breach of contract is DENIED.

## B. TIA Claims

 The Second Circuit has held that the TIA does not apply to PSA trusts. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund*, 775 F.3d at 166–70. Therefore, all TIA claims with regard to the PSA trusts are dismissed. *See HSBC Bank USA*, 109 F.Supp.3d at 614. The TIA claims apply only to the Indenture trusts.

Section 315(b) requires indenture trustees to "give to the indenture security holders . . . notice of all defaults known to the trustee. . . ." 15 U.S.C. § 77ooo(b). That section does not further define the term "defaults." Section 315(c), by contrast, requires the trustee to "exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture . . . as a prudent man would exercise or use under the circumstances in the conduct of his own affairs." 15 U.S.C. § 77ooo(c).

 BNYM argues that Plaintiffs have failed to state a claim under section 315(b) because that section applies only to a default as defined in the indenture. (Defs.' Mem. at 38.) However, "[b]y its plain terms, and unlike section 315(c), section 315(b) does not limit defaults to those Events of Default defined in the Indenture." *HSBC Bank USA*, 109 F.Supp.3d at 612. As Plaintiffs have adequately pleaded the occurrence of servicer defaults, they have also adequately pleaded the occurrence of defaults under section 315(b). Moreover, as Plaintiffs argue, the Indentures incorporate the SSAs, which in turn define "Events of Default" as a material breach of the SSAs by the Servicer. (Opp'n at 36.) *See also Royal Park Invs. SA/NV v. Bank of New York Mellon*, 2016 WL 899320, at *9 (holding plaintiff stated claim under section 315(b) because indenture incorporated servicing agreement, which in turn defined "Event of Default" as servicer defaults). As Plaintiffs have adequately pleaded the occurrence of servicer defaults and that BNYM failed to act prudently, they have also adequately pleaded a claim under section 315(c).

## C. Negligence and Breach of Fiduciary Duty Claims

 "Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir.2012) (citing *Clark–Fitzpatrick v. Long Island R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)). "Such a 'legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Id.* (quoting *Clark–Fitzpatrick*, 521 N.Y.S.2d 653, 516 N.E.2d at 194). "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Id.* (citing *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir.1980)). "If . . . the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Id.* (citing *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 770 (1995)).

Plaintiffs bring two negligence claims and two breach of fiduciary duty claims. Plaintiffs' fourth and fifth causes of action allege that BNYM breached its duty of care. The fourth cause of action alleges that BNYM breached its fiduciary duty "to exercise its contractually conferred rights and powers in good faith and to bring all available claims for the benefit of the Trusts and the Certificateholders." (Compl.¶ 532.) The fifth cause of action alleges that, after the Events of Default occurred, BNYM negligently failed to notify investors of the originators and sponsors' breaches of their obligations, enforce sellers' obligation to cure, and enforce servicers' obligations. (Compl.¶¶ 539–42.) These are essentially the same allegations that give rise to Plaintiffs' breach of contract claims. *See Fixed Income Shares: Series M,* 2015 WL 5244707, at *13. Therefore, Plaintiffs' fourth and fifth causes of action for breach of fiduciary duty and negligence are dismissed as duplicative of the breach of contract claim. *Id.* (dismissing substantively identical causes of action as duplicative of breach of contract claim).

Plaintiffs' third and sixth causes of action allege conflict of interest violations. Under New York common law, an indenture trustee's duty to avoid conflicts of interest is an extra-contractual duty that is not duplicative of a breach of contract claim. *See, e.g., Royal Park Invs. SA/NV v. Bank of New York Mellon,* 2016 WL 899320, at *7. The third cause of action alleges that BNYM negligently breached the pre-default duty of independence. (Compl.523–30.) The sixth cause of action alleges that BNYM breached the post-default duty of independence. (Compl.¶¶ 545–52.)

Courts in this District have recently held that plaintiffs have adequately pleaded a conflict of interest where they have alleged that an RMBS trustee failed to enforce representations and warranties claims or declare Events of Default out of fear of disrupting existing business relationships with counterparties. *See, e.g., Royal Park Invs. SA/NV v. Bank of New York Mellon,* 2016 WL 899320, at *7. They have also credited conflict of interest claims where plaintiffs alleged that an RMBS trustee failed to take action against Sellers and Servicers who violated their obligations to the trusts because it feared retaliation from those same Sellers and Servicers with respect to loans that the RMBS trustee had itself originated or sponsored. *See, e.g., Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.,* 2016 WL 439020, at *9; *Fixed Income Shares: Series M,* 2015 WL 5244707, at *13. Plaintiffs here have made no such allegations. They have merely alleged that BNYM failed to discharge its pre- and post-default duties because doing so would increase BNYM's expenses. (*See* Compl. ¶¶ 494–98.) Plaintiffs argue that the occurrence of an Event of Default would increase BNYM's obligations and therefore costs under the Governing Agreements. (Compl.¶¶ 495–96.) Furthermore, Plaintiffs argue that the occurrence of an Event of Default would require notice to Certificateholders, which in turn would expose BNYM's negligence in carrying out its own ministerial duties. (Compl.¶ 497.) Under Plaintiffs' theory, every RMBS trustee would be conflicted. These allegations are insufficient to allege a conflict of interest. Accordingly, Plaintiffs' third and sixth causes of action are dismissed.

## VII. CONCLUSION

Defendants' motion to dismiss Plaintiffs' first cause of action for breach of contract is DENIED. Defendants' motion to dismiss Plaintiffs' second cause of action for

violation of the TIA is DENIED, except with regard to Plaintiffs' claims under section 315(a) of the TIA, which are DISMISSED.

Defendants' motion to dismiss Plaintiffs' third, fourth, fifth, and sixth causes of action for negligent breach of the pre-default duty of independence, breach of the fiduciary duty of care, negligent breach of the duty of care, and breach of the post-default fiduciary duty of independence is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 48.

SO ORDERED.